1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE FANSLER FOUNDATION, | CASE NO. CV-F-04-5285 LJO DLB |
| Plaintiff, | **ORDER ON MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| AMERICAN REALTY INVESTORS, INC., et al., | Pretrial     Oct. 1, 2007<br>Trial:        Nov. 5, 2007 |
| Defendants. | |

_____/

On March 22, 2007, Plaintiff the Fansler Foundation filed its motion for a preliminary injunction

seeking the following relief:

> (1) restraining and enjoining defendant American Realty Investors, Inc. ("ARI") during
> the pendency of this action from:
>
> > (a) withholding the payment of any previously declared or hereinafter
> > declared quarterly dividends from the Foundation, and (b) otherwise
> > failing or refusing to perform any obligation it owes to the Foundation to
> > pay the Foundation $400,000 each quarter, and
>
> (2) restoring the status quo ante by requiring defendant ARI to transfer to the Foundation
> the amount of $5,460,000 which represent the total of the unpaid dividends plus interest
> wrongfully withheld by ARI.

Defendants American Realty Investors, Inc. ("ARI") and Basic Capital Management, Inc. filed an

opposition to the motion on April 20, 2007.  Plaintiff filed a reply on April 27, 2007. Pursuant to Local

Rule 78-230(h), this matter was submitted on the pleadings without oral argument, and the hearing set

for May 4, 2007 was vacated.  Having considered the moving, opposition, and reply papers, as well as

the Court's file, the Court issues the following order.

1

**FACTUAL BACKGROUND**

The Foundation is a non-profit corporation which financially assists developmentally challenged youth and supports qualified charities in the Fresno County area.  The Foundation has one primary source of outside income: the guaranteed 10% cumulative compound dividend in the amount of $400,000 per quarter that ARI is obligated to pay the Foundation on the 1,600,000 shared of ARI Series A preferred stock owned by the Foundation.  From 1997 through 2003, ARI and its predecessor American Realty Trust, paid the quarterly dividends.  After the Foundation filed suit in this case, ARI stopped making the dividend payments.  The charities that are supported by the Foundation rely on the Foundation's financial assistance for the charities' continued existence.

Prior to August 1997, the Foundation was the owner of four Fresno hotels commonly referred to as the Piccadilly Inn Hotels (the "Hotels").  By written agreement dated July 31, 1997, the Foundation sold its interests in the Hotels to American Realty Trust, Inc. ("ART"), a Georgia corporation.  The Foundation received cash and $16 million convertible, preferred Series F stock of ART.

In November 1999, ART publicly announced that it had entered into an agreement and plan of reorganization (the "Merger") to combine with another affiliated entity, National Realty, L.P. ("National"), through the creation of defendant ARI as a holding company. Initially, the Foundation dissented, but ultimately elected to approve the merger.  The Fansler Foundation received $1.6 million face value Series A convertible, preferred stock of ARI in exchange for its existing ART preferred stock.

Thereafter, ARI began to delay making the required dividend payments and ultimately stopped in early 2004.

Plaintiff filed this action on February 12, 2004.  Although plaintiff alleges that Defendants promised and assured that Defendants would list the ARI Series A shares on the NYSE, they have never done so.  As a result, the current value of the Series A shares held by the Foundation is several million dollars less than it would have been if defendants had fulfilled their promises and agreement.  The Foundation alleges that the foregoing conduct by Defendants establishes state law claims for fraud, negligent misrepresentation, breach of fiduciary duty, breach of contract, conversion, and other claims.

Trial is set for November 5, 2007 an the pretrial conference is set for October 1, 2007.

/////

2

# ANALYSIS AND DISCUSSION

**A.     State Law Controls**

Defendant argues that state law controls the determination of whether a preliminary injunction should issue, both because the law is substantive in nature and because the parties contractually agreed that California law controls.

Under the *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) doctrine, federal courts exercising diversity jurisdiction in an action based on state law apply the same rules that state courts would apply to all "substantive" issues in the case; "procedural" matters, however, are controlled by the Federal Rules. *See Walker v. Armco Steel Corp.* (1980) 446 US 740, 750, 100 S.Ct. 1978, 1985.  In the Ninth Circuit, injunctive relief is a "substantive" (outcome-determinative) issue under the *Erie* doctrine and therefore governed by state, not federal, law. "The general equitable powers of federal courts should not enable a party suing in diversity to obtain an injunction if state law clearly rejects the availability of that remedy." *Sims Snowboards, Inc. v. Kelly*, 863 F2d 643, 647 (9th Cir. 1988).  In *Sims Snowboards*, the Ninth Circuit vacated a district court order granting a preliminary injunction on a state law based breach of contract claim where injunctive relief was unavailable under California law. In reviewing the trial court order, the Ninth Circuit referred explicitly to the procedural requirements of Federal Rule of Civil Procedure 65, but explained, "[t]he general equitable powers of federal courts should not enable a party suing in diversity to obtain an injunction if state law clearly rejects the availability of that remedy." *Id.* at 647.  As the Ninth Circuit explained, "Rule 65 merely sets forth the procedural terms for the issuance of injunctions and restraining orders and does not itself authorize injunctive relief." *Sims Snowboards*, 863 F.2d at 646.  Accordingly, California law applies to determine whether a preliminary injunction should issue.[1]

**B.     State Law Preliminary Injunction Standards**

California Code of Civil Procedure ("CCP") § 526 lists the traditional equity considerations and requirements for granting of injunctions. An injunction is considered proper under CCP §526,

---

[1] In its reply brief, plaintiff argues that federal law governs the procedural standard for preliminary injunction, citing *Schering Corp v. First Databank, Inc.*, 2007 WL 1068206 (N.D. Cal. 2007).  *Schering* did not analyze whether state or federal law was applicable.  *Schering* is not controlling.

3

1   subdivisions for (a)(1) [restraining act for limited period or indefinitely], (4) [pecuniary compensation

2   inadequate], (5) [compensation difficult to determine], and (6) [restraint necessary to prevent multiplicity

3   of lawsuits].

4        In the instant case, two particular provisions are applicable.  First, an injunction will not be

5   granted 'to prevent breach of a contract, the performance of which would not be specifically

6   enforced'—except written contracts to perform 'unique' personal services for a certain minimum

7   compensation. See CCP § 526(b)(5); Civ.C. § 3423(e).  Injunctions will rarely be granted (absent

8   specific statutory authority) where a suit for damages provides a clear remedy. *Pacific Design Sciences*

9   *Corp. v. Sup.Ct. (Maudlin)*, 121 CA4th 1100, 1110, 18 CR3d 104, 111 (2004).

10       Second, CCP § 526(a)(2) lists the traditional consideration of 'irreparable harm.' Irreparable

11  harm is often related to the 'inadequate legal remedy' (i.e., the damages remedy is inadequate because

12  some immeasurable harm is threatened). But, it is also a separate consideration. The judge is looking

13  for more than a mere dispute. Relief is unlikely unless someone will be badly hurt in a way which cannot

14  be later repaired. *People ex rel. Gow v. Mitchell Brothers' Santa Ana Theater*, 118 Cal.App.3d 863,

15  870–871, 173 CR 476, 479 (1981).  An injunction will not issue where 'only money is involved.' The

16  rationale is that there is no threat of irreparable harm, because monetary losses are compensable in

17  damages. *Doyka v. Sup.Ct. (Lord)*, 233 CA3d 1134, 1136, 285 CR 14, 15 (1991) (voiding injunction

18  against party 'using funds on deposit in any bank ... for any purpose whatsoever': this was in effect a

19  prejudgment attachment without complying with attachment statute).

20       Moreover, the threat of 'irreparable harm' must be imminent ... as opposed to a mere possibility

21  of harm some time in the future: 'An injunction cannot issue in a vacuum based on the proponents' fears

22  about something that may happen in the future. It must be supported by actual evidence that there is a

23  realistic prospect that the party enjoined intends to engage in the prohibited activity.' *Korean*

24  *Philadelphia Presbyterian Church v. California Presbytery*, 77 Cal.App.4th 1069, 1084, 92 Cal.Rptr.2d

25  275, 285  (2000).

26  **C.     Issue of delay**

27       This action was filed on February 12, 2004, over three years ago.  Plaintiff has only now sought

28  the Court's assistance in issuance of a preliminary injunction.  As defendant accurately states, Plaintiff

4

does not explain why it waited from the date the payment of dividends was suspended to file this motion nor how the harm to it has suddenly become irreparable.  In its reply brief, plaintiff argues that as a non-profit, it will lose funding and deplete its principal balance during the pendency of the case.

The only evidence of injury is that plaintiff is continuing to draw down on its considerable reserves to fund its charitable endeavors.  It has drawn down $2,000,000 and its total investment accounts have been reduced to about $5,650,000.  (Prudek Decl. ¶8.)  Plaintiff does not argue that it lacks funds to continue its charitable work.  Moreover, plaintiff does not explain what the irreparable harm would be between now and the November 2007 trial date.

The three year delay, absent any explanation, warrants a finding that plaintiff will not suffer irreparable injury.

**D.      Issue of Breach of Contract**

The parties dispute whether this action is one sounding in breach of contract or one sounding in tort.  Plaintiff terms the action here as one in conversion.

Plaintiff cites *Farmers Ins. Exchange v. Zerin*, 53 Cal.App.4th 445, 451 (1997) for the proposition that a conversion has occurred.  Money can be the subject of an action for conversion if a specific sum capable of identification is involved.  *Farmers Ins. Exchange v. Zerin*, 53 Cal.App.4th 445, 452 (Cal.App.3.Dist.1997).  A mere contractual right of payment, without more, will not suffice.  *Farmers Ins. Exchange v. Zerin*, 53 Cal.App.4th 452.  If money is not specifically identified, then the proper action is in contract or for debt. *Baxter v. King*, 81 Cal.App. 192, 194, 253 P. 172 (1927) (because plaintiff is not asking for a specific fund, but for damages for refusing to deliver corporation dividends received by the defendant).

Whether it is breach of contract or conversion, there is an adequate remedy at law.  Indeed, the request for the injunction is the immediate payment of money to Plaintiff.  Plaintiff asks that this court order "ARI to transfer to the Foundation within seven days of the Court's order the amount of $5,460,000. . ." (Doc. 39, Notice of motion p. iv.)  Thus, the remedy sought in this motion is the payment of money.

**E.      Prohibitory or Mandatory Injunction**

The parties dispute whether the injunction is prohibitory or mandatory.

1    'An injunction is prohibitory if it requires a person to refrain from a particular act and mandatory

2    if it compels performance of an affirmative act that changes the position of the parties.' *Davenport v.*

3    *Blue Cross of Calif.*, 52 Cal.App.4th at 448.  An injunction which compels a party to perform some

4    physical act or surrender property is mandatory. *Davenport v. Blue Cross of California*, 52 Cal.App.4th

5    at 447.

6        Plaintiff argues that the injunction is prohibitory because it seeks to restore the *status quo* to

7    prohibit defendant from "failing and refusing" to pay the dividends.  Defendant argues the injunction

8    is mandatory because it mandates the payment of money, the turning over of property.

9        Here, plaintiff is seeking renewed payment of dividends and payment of over $5 million in

10    dividends.  The preliminary injunction, which would require the surrender of property, is mandatory.

11                                                    **CONCLUSION**

12        For all the foregoing reasons, the motion for issuance of a preliminary injunction is DENIED.

13    IT IS SO ORDERED.

14    **Dated:    May 2, 2007**                          **/s/ Lawrence J. O'Neill**
                                                        UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6