IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE FANSLER FOUNDATION,<br><br>         Plaintiff,<br><br>   vs.<br><br>AMERICAN REALTY INVESTORS,<br>INC., et al.,<br><br>         Defendants.<br>_____ / | CASE NO. CV-F-04-5285 LJO DLB<br><br>**ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Pretrial   Oct. 1, 2007<br>Trial:       Nov. 5, 2007 |

On August 6, 2007, defendants American Realty Investors, Inc. ("ARI") and Basic Capital Management, Inc. ("Basic") filed a motion for partial summary judgment. Plaintiff The Fansler Foundation ("Foundation") filed an opposition on August 24, 2007. Defendants filed a reply on August 30, 2007. Pursuant to Local Rule 78-230(h), this matter was submitted on the pleadings without oral argument, and the hearing was vacated. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.

**FACTUAL BACKGROUND**

The Foundation is a non-profit corporation which financially assists developmentally challenged youth and supports qualified charities in the Fresno County area. The Foundation has one primary source of outside income: the allegedly guaranteed 10% cumulative compound dividend in the amount of $400,000 per quarter that ARI pays the Foundation on the 1,600,000 shares of ARI Series A preferred stock owned by the Foundation. From 1997 through 2003, ARI and its predecessor American Realty Trust ("ART"), a Georgia corporation, paid the quarterly dividends. After the Foundation filed suit in

this case, ARI stopped making the dividend payments.

Prior to August 1997, the Foundation was the owner of four Fresno hotels commonly referred to as the Piccadilly Inn Hotels (the "Hotels"). By written agreement dated July 31, 1997, the Foundation sold its interests in the Hotels to ART. The Foundation received cash and $16 million convertible, preferred Series F stock of ART. ART was supposed to secure the listing on the New York Stock Exchange ("NYSE"), but the listing did not occur.

In November 1999, ART planned a reorganization (the "Merger") to combine with another affiliated entity, National Realty, L.P. ("National"), through the creation of defendant ARI as a holding company. Initially, the Foundation dissented, but ultimately elected to approve the Merger. The Fansler Foundation received $1.6 million face value Series A convertible, preferred stock of ARI in exchange for its existing ART preferred stock.

Thereafter, ARI began to delay making the required dividend payments and ultimately stopped in early 2004.

Plaintiff filed this action on February 12, 2004 and filed the operative Second Amended Complaint ("Complaint") on July 28, 2006. Plaintiff alleges that as inducement to approve the Merger, Defendants ARI and Basic (ARI's majority shareholder) promised and assured plaintiff that Defendants would list the ARI Series A shares on the NYSE. The stock is not listed on the NYSE. Plaintiff alleges that, as a result, the current value of the Series A shares is several million dollars less than it would have been if defendants had fulfilled their promises and agreement. The Foundation alleges that the foregoing conduct by Defendants establishes the following claims for relief.

    (1) Fraud and misrepresentation,

    (2) Breach of fiduciary duty,

    (3) Negligent misrepresentation,

    (4) Breach of Contract,

    (5) Tortious interference with contract,

    (6) Tortious interference with prospective economic advantage,

    (7) Conversion, and

    (8) Rescission.

Trial is set for November 5, 2007 and the pretrial conference is set for October 1, 2007.

## ANALYSIS AND DISCUSSION

**A.     Summary Judgment Standard**

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." F.R.Civ.P. 56( c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985); *Loeh v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The requirement that an issue be "genuine" relates to the quantum of evidence the plaintiff must produce to defeat the defendant's summary judgment motion. There must be sufficient evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

"As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial," and in such circumstances, summary judgment should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56( c), is satisfied." *Celotex Corp. v. Catarett*, 477 U.S. 317, 322 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968) *T.W. Elec. Serv.*, 809 F.2d at 631. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving

3

party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted). The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255; *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.     The Parties' Positions**

Defendants argue that the statute of limitations bars the Foundation's claims. Defendants argue that the gravamen of plaintiff's Complaint is the right to dissent from the 2000 Merger and to receive fair value for its shares. (Doc. 56, Moving papers p. 3:13.) Defendants argue any claim seeking to dissent from the Merger, and to recover the "fair value" of plaintiff's shares of ARI, is an exercise of "shareholder dissenter rights," and is barred by a strict three-year statute of limitations. The case was filed three and one half years after the events, and is therefore, barred.

Defendants have not argued, however, that the Foundation's claims, as pled in the Complaint, are time-barred. Rather, defendants argue that the "gravamen" of the Complaint, and as interpreted by defendants, is a dissenter's rights case seeking "fair value" of the shares. Accordingly, to obtain partial summary judgment, the "gravamen" of the Complaint must be a claim for dissenter's rights.

On the other hand, Plaintiff argues that the "gravamen" of its Complaint does not allege a dissenter's rights claim. (Doc. 60; Opposition Brief p.1.) Plaintiff argues that the Complaint alleges defendants committed fraud and breached their fiduciary duties by making misrepresentations and concealing information that caused the Foundation to vote in favor of the Merger and not exercise dissenter's rights. (*Id.* at p. 1-2.) Plaintiff notes that it has not pled a claim under the dissenter's rights statute. Plaintiff argues that even it the dissenter's rights statute would support a claim by the Foundation, it has not applicable to Defendant Basic, the majority shareholder and manager of ARI.

**C.     Georgia State Law**

The parties agree that Georgia law applies in this diversity action because ARI is a Georgia Corporation. (Doc. 62, Plaintiff's Opposition to Undisputed Facts, no. 12.)

Here, defendant does not argue, and there is no authority, that the claims, as pled, are barred by the statute of limitations. See e.g., Ga. Code Ann. § 9-3-31 (4 year statute of limitations for breach of fiduciary duty.)

The focus of defendant's moving papers is Georgia's dissenter's rights statute. The applicable Georgia statute of limitations for dissenter's rights is Georgia Corp. Code §14-2-1332 which states:

> No action by any dissenter to enforce dissenters' rights shall be brought more than three years after the corporate action was taken, regardless of whether notice of the corporate action and of the right to dissent was given by the corporation in compliance with the provisions of Code Section 14-2-1320 and Code Section 14-2-1322. (Code 1981, § 14-2-1332, enacted by Ga. L. 1988, p. 1070, § 1.)

The parties have not cited, and the Court has not found, any case that has interpreted section 14-2-1332.[1]

### D.  The Gravamen of the Complaint

Here, the parties do not agree on the gravamen of the complaint. The parties did not cite, and the Court did not find, authority that determining the "gravamen" of a complaint is an issue of law. The "gravamen" of the complaint is, in and of itself, an issue of fact because it requires determining the main act which injured plaintiff.

Assuming determining the gravamen of the complaint is a task for the Court, the Court evaluates the "gravamen" as follows. The gravamen of the complaint is the "principle thrust" or the "operative facts." See *Martinez v. Metabolife Int'l, Inc.*, 113 Cal.App.4th 181, 187, 6 Cal.Rptr.3d 494, 499 (2003) (thrust of complaint or "gravamen."); *Goldman v. Wilsey Foods, Inc.*, 216 Cal.App.3d 1085, 1094–1095, 265 Cal.Rptr. 294, 299 (1989) ("Operative facts" are those creating a right to recovery.) The parties have not cited any Georgia authority that the gravamen of the complaint is determined differently. For instance, under Georgia law, the gravamen of an action in tort is the tortious act of the defendant, rather than the damage which it produces. *Georgia Ry. & Power Co. v. Endsley*, 167 Ga. 439, 145 S.E. 851, 853 (Ga. 1928).[2]

In their moving papers, the only allegations defendants cite as the "gravamen" of the complaint

---

[1] The Merger in this case is the type of transaction for which Georgia law provides the right of a shareholder to dissent: "A record shareholder of the corporation is entitled to dissent from, and obtain payment of the fair value of his or her shares in the event of, any of the following corporate actions: (1) Consummation of a plan of merger to which the corporation is a party . . ." Ga. Code Ann., § 14-2-1302.

[2] In their reply, defendants cite several cases for the proposition that the gravamen of the complaint is determined by the injury, not the legal theory brought. (Doc. 66, Defendants' Reply Brief p. 6.) For instance, *Daniel v. American Optical Corp.*, 251 Ga. 166, 167, 304 S.E.2d 383, 385 (1983) held, in general, statutes of limitations governing actions in personal injury or tort also apply to strict liability actions. The cases are consistent that the Court looks to the substance of the allegations.

are the plaintiff's opening, introductory allegations, which are:

> "This action arises primarily out of the promises, misrepresentations, concealments, breaches of duties and other illegal, wrongful, fraudulent and tortious conduct . . . which resulted in among other things: (1) the failure of the Foundation to receive full and fair value for certain securities of defendant ARI, and its predecessor [ART], in connection with the reorganization of ART into ARI and related events; (b) the failure of the Foundation to receive millions of dollars of dividends that have been declared by ARI and are payable to the Foundation but have been intentionally and wrongfully withheld from the Foundation and unlawfully converted by Defendant ARI for Defendant's own use in a malicious effort to oppress the Foundation; and ( c) the wrongful deprivation and violation of the Foundation's shareholder rights."

Defendants do not refer to any other allegations in their moving papers for their argument that the "gravamen" of the complaint is a dissenter's rights claim. Defendants argue that plaintiff wants a "do over" to object to the merger.[3]

Plaintiff cites *Robuck v. Dean Witter & Co.*, 649 F.2d 641, 645 n.2 (9th Cir. 1979) for the proposition that the "gravamen" of a complaint arises from the <u>actual</u> causes of action pled in the complaint. In *Robuck*, the Court applied California law to determine the statute of limitations for fraud and breach of fiduciary duty claims. But, in *Robuck*, the court remanded for a determination of the unpled claim of breach of fiduciary duty.

In Federal Court, the court may not grant summary judgment on theories not plead in the complaint. A summary judgment is framed by the pleadings. F.R.Civ.P. 56.

Throughout the allegations in the Complaint, there are two consistent "thrusts" - (1) the listing of the shares on the NYSE so as to enhance the shares' value, and (2) the continuing need for certainty of dividends, which plaintiff was using to fund its charitable work. Among these allegations are:

> 26. The Foundations' notice of dissent caused [ ] great alarm. . . The Basic and ART representatives represented, among other things, that the Merger would strengthen the value of the Foundation's shares, that Basic and ART were working hard to list the Foundation's preferred shares with the NYSE and that the new ARI preferred shares to be issued to the Foundation would be listed on the NYSE so that the Foundation would

---

[3] In defendants' reply, they argue that these allegations are repeated in each claim.

|   |   |   |
|---|---|---|
| 1 |  | then be able to sell its preferred shares on the open market. (Complaint ¶26.) |
| 2 | 31. | Notwithstanding defendants' multiple promises and assurances that Defendants would list the ARI Series A shares on the NYSE, they have never done so. . . As a result, the current value of the Series A Shares held by the Foundation is several million dollars less than it would have been if Defendants had fulfilled their promises and commitments. (Complaint ¶31.) |
| 7 | 32. | Following the Merger, ARI began again to delay payment of dividends to the Foundation and became regularly delinquent in making its required quarterly cumulative dividend payments to the Foundation. (Complaint ¶32.) |
| 10 | 33. | In July 2003, Waldman, as counsel to ARI, denied for the first time that the dividends payments to the Foundation were ever guaranteed, as had been previously represented to the Foundation. (Complaint ¶33.) |
| 13 | 34. | In flagrant violation of Defendant' fiduciary and other duties to the Foundation, and in violation of ARI's own Articles of Incorporation, Defendants ceased paying dividends to the Foundation while continuing to declare quarterly Series A dividends and authorizing and ratifying the payment of those dividends to Series A shareholders other than the Foundation. (Complaint ¶34.) |
| 18 | 34. | Moreover, on ARI's own audited financial statements and on ARI's filings with the SEC, ARI has treated the unpaid dividends as having been paid, thereby falsely representing facts in those financial statements and filings. (Complaint ¶34.) |
| 21 | 55. | The 1997 agreement between ART and the Foundation subsequently assumed by ARI in 2000, as well as Defendants' representations and assurances regarding their obligations to the Foundation, explicitly and impliedly obligated defendant ARI to take all actions necessary to, among other things, list the ARI Series A shares on the NYSE, assure that all dividends were paid to the Foundation in a timely manner and assure that the Foundation received all of the protections and rights promised to it. (Complaint ¶55.) |

These allegations, among others, are characterized by plaintiff as broader than any dissenter's right claim. Plaintiff argues that it intends on proving defendants' conduct, in causing plaintiff to rescind its

vote to dissent from the merger, was obtained through fraud and was a breach of fiduciary duty. Plaintiff argues:

> "The Foundation alleges that it exercised its statutory dissenter's right, but then was induced and pressured by defendants' misrepresentations and their concealment of important facts to revoke this dissent and vote to approve the Merger. These allegations go beyond the question of whether defendants paid the Foundation 'fair value' under the statute to the issue of whether Defendant fraudulently induced the Foundation not to vote in favor of the Merger." (Doc. 60, Opposition Brief p. 14) (emphasis deleted.)

Georgia's dissenter's statute excepts transactions induced by fraud. Ga. Code Ann., § 14-2-1302(b) provides in relevant part:

> "A shareholder entitled to dissent and obtain payment for his or her shares under this article may not challenge the corporate action creating his or her entitlement unless . . . <u>the vote required to obtain approval of the corporate action was obtained by fraudulent and deceptive means</u>, regardless of whether the shareholder has exercised dissenter's rights. (Emphasis added.)

Indeed, under Georgia law, a plaintiff would not be precluded from asserting his/her rights by acquiescing in a sale, which acquiescence was induced by fraud. *See Quinn v. Forsyth*, 116 Ga.App. 611, 619, 158 S.E.2d 686, 692 (Ga.App. 1967). Where a fiduciary fails to disclose a material fact, there is actionable fraud. Ga. Code Ann. § 23-2-53; *Goldston v. Bank of America Corp.*, 259 Ga.App. 690, 696 (577 S.E.2d 864) (2003); *Paul v. Destito*, 250 Ga.App. 631, 635(1) n. 5 (550 S.E.2d 739) (2001). Construed in favor of the plaintiffs, the facts show that the defendants breached their fiduciary duty by making material misrepresentations and omissions about the Merger. The statute of limitations for a cause of action for breach of fiduciary duty is triggered by a wrongful act accompanied by any appreciable damage. *See Allen v. Columbus Bank & Trust, Co.*, 244 Ga.App. 271, 272, 534 S.E.2d 917 (2000).[4]

---

[4] In their reply, defendants cite *Grace Bros., Ltd. v. Farley Indus.*, 264 Ga. 817, 820-82, 450 S.E.2d 814 (1994), that the statutory appraisal remedy in Ga. Code Ann. § 14-2-1302(b), is the exclusive remedy when the dispute is essentially about the price of the stock. "A remedy beyond the statutory procedure is not available where the shareholder's objection is essentially a complaint regarding the price which he receives for his shares." *Id.*; *accord Haskins v. Haskins*, 278 Ga.App. 514, 519, 629 S.E.2d 504, 508 (2006). These cases are not inconsistent with allegations of fraud.

The Court finds that the gravamen of the complaint is not a dissenter's claim. Plaintiff alleges that its vote in favor of the Merger was obtained through fraudulent or deceptive means. Even if the gravamen of the complaint were a dissenter's claim, plaintiff has presented evidence of representations and inducements which altered the Foundation's position on the Merger.

**E.     Type of Damages**

In their reply brief, defendants argue:

> "Plaintiff here claims actual fraud, but to the extent it seeks to recover the purely statutory remedy of 'fair value' more than three years after the challenged corporate action, it is barred. At most, to the extent plaintiff now claims fraud with respect to the 2000 merger, it may only do so by asserting a common law claim for actual fraud and which seeks recovery of common law fraud damages. Again, the statutory appraisal remedy of 'fair value' is time-barred."

In its Notice of Motion, Defendants sought to preclude "any claim for which Plaintiff The Fansler Foundation seeks to exercise its shareholder dissenter rights. . ." (Doc. 56, Notice of Motion p. 1.) In its reply, defendants now seek to preclude the type of remedy available to plaintiff. The remedy permitted in a claim is a different issue for partial summary judgment from whether a claim is timely. Whether the remedy is permitted is not before the Court in this motion.

## CONCLUSION

For the foregoing reasons, the Court DENIES the motion for partial summary judgment.

IT IS SO ORDERED.

**Dated:     September 11, 2007**              /s/ Lawrence J. O'Neill
                                                                           UNITED STATES DISTRICT JUDGE